Moncure, P.
delivered the opinion of the court.
The object of this suit is to annul a decree in another suit, the sale made under or confirmed by it and any conveyance which may have been executed in pursuance of said decree.
A decree of a court of competent jurisdiction, in a suit between proper parties, is valid and conclusive until reversed on some proper proceeding in the same suit and the same court, or on appeal to an appellate court; unless there be some sufficient ground of fraud or surprise to entitle the injured party to relief in some other suit.
If the decree in controversy in this case be void, as contended by the appellants, where was the difficulty in their obtaining relief by an action at law ? If they had an adequate remedy at law, as it seems they had if their pretensions be well founded, then they are entitled to no relief in equity.
But had not the court which rendered the decree competent jurisdiction to make it, and was it not rendered in a suit between proper parties ?
First. Had not the court jurisdiction to make such a decree ?
*502 The decree was rendered by the Circuit court of AuSusta county in a suit instituted in said court for the Part'ti°n of the “ Greenville mills,” situated in said county. The suit was founded on chapter 124 of the Code, page 581, concerning “partitions and coterminous owners.” By the 1st section of that chapter, “tenants in common, joint-tenants and coparceners ” are “ compellable to make partition”; and “the court of equity of the county or corporation wherein the estate or any part thereof may be,” are expressly invested with jurisdiction in such cases. The parties to the said suit came within the categories enumerated in the section. They were tenants in common or joint-tenants. And the subject for partition was situate in the county where the court was in which the suit was instituted.
By the 3d section of the chapter, it is provided that when partition cannot be conveniently made, if the interests of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, the court may order such sale ; and may so order, “ notwithstanding any of those entitled may be an infant, insane person or married woman ”; and may “ make distribution of the proceeds of sale according to the respective rights of those entitled.” Whether partition can be conveniently made in kind or not, and whether the interests of those who are entitled to the subject or its proceeds will be promoted by a sale of the entire subject or not, are questions for the court in which the suit for partition may be brought to decide, and its decision cannot be questioned in any collateral suit, except on the ground of fraud or surprise. That a sale is made pending the suit, by agreement of the parties in person or by counsel, which sale is afterwards- approved and confirmed by the court, makes no difference. Such a sale is as valid as if made under a previous decree of the court in the suit, and can no more be impeached collaterally than if so made. It is in fact a sale made *503 under a decree. Then the court had jurisdiction to make such a deci’ee. And now,
Secondly. Was not the decree rendered in a suit be- . . tween proper parties ; that is, all the proper parties ?
The suit was brought by one of the two sole proprietors of the property, and both of them were sui juris. There could have been no difficulty then on the score of parties. But pending the suit, and it seems before any decree or order had been made therein, the plaintiff, John W. Wilson, died, having been killed in battle, and it then became necessary to revive the suit against the real representatives of the plaintiff, who were his widow and devisee, Margaret E. Wilson, and his infant child and sole heir at law, John W. Wilson. Those representatives had an unquestionable right to revive the suit in their names, and prosecute it to the same conclusion to which it might have been prosecuted by the original plaintiff, to whose rights they succeeded; and the only question is whether it was so revived. The appellants insist that it ought to have been revived by a supplemental or amended bill, or bill of revivor; or at least by a scire facias. But the Code, chapter 173, § 4, page 718, provides that where the party dying is plaintiff, the person or persons for whom such scire facias might be sued out, may, without notice or scire facias, move that the suit proceed in his or their name, and an order shall be made accoi'dingly. In this case, on the 15th day of June 1863, the death of the plaintiff’, John W. Wilson, was suggested, and an oi’der was made thatjthe suit be revived and proceeded in in the name of “ John Newton and John J. Larew, administrators with the will annexed,” “--Wilson, infant son and sole heir,” “and -Wilson, widow and devisee of said John W. Wilson, deceased.” Was not this a sufficient revival of the suit in the name of the real representatives of the plaintiff according to the aforesaid provision of the Code * We think it was. The administrators with the will an *504 nexed of John W. Wilson were unnecessary parties; but the revival in their name can do no harm. The in-8011 an(^ widow of the plaintiff were his sole real-representatives, and the suit was revived in their names : Ver inutile nor vitiatur. That the Christian names of the infant son and widow are not inserted in the order, can make no difference. Enough is inserted in it to describe and identify the parties beyond all possibility of mistake. That no next friend of the infant is named in the order can make no difference. It would have been out of place to have revived the suit in the name of a next friend of the infant, and was more appropriate to. allow some person as next friend to prosecute the suit for the infant. That might as well have been done in some subsequent order as in the order reviving the suit ; and we may well presume that it was accordingly so done. There is nothing in the record of this case to show that it was not so done. A copy of the record of the partition suit is not made a part of the record in this suit. Even if there was not a formal assignment of a next friend by an order of the court in that suit, it may well be questioned whether such a mere informality would of itself avoid the proceedings in the suit, and the sale made under them. The infant came into court and into the cause with his mother and the personal representatives of his father; and they may well be considered, in the absence of evidence to the contrary, and for the purpose of giving effect to the proceedings, as his next friends. Alexander Brownlee, the grandfather of the infant, qualified as his guardian on or about the same day on which the agreement to make the sale, subject to the decree of the court, was signed by the counsel. He may have acted as next friend of the infant in whose name the suit had just one month before been revived. A formal order assigning a next friend to prosecute a suit for an infant is vei’y unusual in our practice. Any person may bring a suit in the name of an infant as its *505 next friend, and ordinarily the court will recognize him as such next friend, and take cognizance of the case as properly brought and prosecuted. If it appear to the court that the suit is not for the benefit of the infant, or that the person named as next fried is not a suitable person for the purpose, the court may dismiss the suit without prejudice, or assign another person to prosecute it as next friend.of the infant. And the court may, if it think fit, direct an enquiry by a commissioner to ascertain whether the.' suit be for the benefit of the infant, or whether the person prosecuting it as next friend be a fit person for that purpose. It does not expressly appear from the order reviving the suit on whose motion it was made. The presumption, however, is that it was made on the motion of the parties in whose names the suit was revived, or at least of all of them except the infant, who was of too tender years, to make it in proper person. It was no doubt made by the adult parties for themselves and as next friend of the infant. They alone had the right to make it. The suit could be revived only in the names of the real representatives, who were the widow and devisee and the infant child and sole heir.
But if there were any irregularities in any of the respects aforesaid, (and whether there were or not, is a question upon which we mean to express no opinion in this case), objection on that account could only be made, if at all, in that suit, or on appeal from the decree therein, and not by an independent suit.
"We are therefore of opinion that the decree (in the partition suit) was rendered in a suit between proper parties.
It now only remains to he considered, whether there was any sufficient ground of fraud or surprise to entitle the appellants to relief in this suit ?
There was certainly no surprise in the case either proved or alleged, nor was there any fraud. The only *506 ground on which any pretence of fraud can he based, is the allegation in the bill, that “ the said Margaret E. never employed counsel to attend to her interest in said property : neither of the counsel who consented to a sale of said property, had been employed by her; nor were they or either of them authorized to speak for her. If they undertook to consent to a sale of said property, it was without the shadow of authority from said Margaret E. or any person authorized to act for her child.”
It is not necessary that the counsel who consented to the sale of said property in behalf of the plaintiffs should have been employed by the said Margaret E. or her child, or his guardian, provided that the said counsel were employed by John W. "Wilson, the original plaintiff in the partition suit, who was the husband of said Margaret E. and father of her child, and it is not pretended that they were not so employed. Being so employed, and he, John W. Wilson, having died pending the suit, which was afterwards revived in the name of his widow and child as his devisee and heir, the authority of the said counsel to act for the plaintiffs in the suit after it was revived must be presumed to exist, in the absence of evidence to show that it was determined. There is no such evidence in the case. On the contrary, the evidence shows that after the death of the original plaintiff in the partition suit, John W. Wilson, his widow and the guardian of his child recognized the authority of his counsel to continue to act for them in the suit, and consented to the sale of the property. John Newton, the commissioner who made the sale, expressly proves that he was requested by the counsel on both sides of the partition suit to see Mrs. Wilson, the widow, and ascertain from her whether she would consent to the sale of the property; that he accordingly saw her, and she said she preferred that it should be sold; that he had several conversations on the subject with Alexander Brownlee, her father and *507 guardian of her child, and he seemed to be satisfied as to the sale being made, and told -witness he would see Mr. Thomas J. Miehie, his counsel, on the subject, or had seen him; that Mr. Brownlee, as guardian, was present at the sale and made no objection, but seemed to be satisfied; that witness never heard of any dissatisfaction of any of these parties until the filing of the bill in this cause, although he saw Mrs. "Wilson very frequently after the sale. This evidence, if it be true, leaves no room for doubt as to the authority of the counsel for the plaintiffs in the partition suit to act for them. It is not contradicted, in any material respect, by the evidence on the other side. That evidence consists of the depositions of the father and brother of the female plaintiff, and of that plaintiff herself, her father being the guardian of her child. The feelings of these witnesses were all, naturally, on the side of the plaintiffs ; and yet, according to the testimony of them all, the widow and guardian of the infant child of John "W "Wilson, the original plaintiff' in the partition suit, in effect, assented to the sale. And this is the material, if not the ouly material, fact to which the testimony re ■ lates. To be sure, the witnesses for the plaintiffs testify that the widow was at first opposed to a sale—said she had Confederate money enough, and that she would sooner have the property; and that John Newton, the commissioner, wished her to consent to the sale, and told her she had better have it sold, for the yankees would come and burn it down, and it would do her and no one else any good. But they further testify that the widow and guardian both yielded to the opinion and advice of said Newton and assented to the sale, if thought best by him or the counsel for the plaintiffs in the partition suit. Now it is not pretended that Newton was influenced by improper motives in expressing the opinion, or giving the advice aforesaid. They were, no doubt,. *508 honestly expressed and given, and they were such as would doubtless have been expressed and given by ^0103*- every person of good judgment, under the circumstances. The property consisted of mills, which contributed to the sustenance of the Confederate army, and were in the line of the march of the enemy. It was, therefore, in imminent danger of being burned down by them. Newton properly assigned that danger as a reason for selling the property. It was accordingly sold for . |18,525 in Confederate money, which was certainly better, according to the judgment of most discreet men at that time, than to keep it under such circumstances, even though it might have been worth, under different circumstances, six or seven thousand dollars in good money. The sale was made on the 14th of August 1868. The mills were, in fact, burned down by the Federal army in 1864, in confirmation and verification •of the opinion expressed by Newton as aforesaid. There was then no ground of fraud on the part of Newton, or any of the parties to the partition suit, on which the decree in that suit can be impeached even as to them. Much less is there any such ground in regard to the purchaser at the sale, against whom, as he truly says in his answer, “no impropriety is alleged,” and who “stands upon the legal validity of the proceedings under which he bought and now holds the property.” He was at bona fide purchaser for value and without notice, under a decree of a court of competent jurisdiction, in a suit between proper parties; has paid up the full amount of the purchase money, and has been duly invested with the title by a deed regularly executed and recorded, and he is, therefore, entitled to hold the property against the claim of the plaintiff in this suit.
Of course what we have said must be considered as referring only to the question of the right.of the plaintiffs to relief in this .suit, and not to any right they may *509 have to relief by any proceeding in the partition suit, or by an appeal from the decree therein. The latter question does not arise and cannot be decided in this case, and the record of the partition suit, upon which only it can arise, is not before us.
"We think there is no error in the 'decree, and that it ought to be affirmed.
Decree affirmed.